UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

CASE NO.    3:24-cr-187-WWB-LLL-1

v.

FREDERICK HILDENBRAND
_____/

## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED FROM HIS HOME

**COMES NOW**, the Defendant, FREDERICK HILDENBRAND, by and through his undersigned counsel, and respectfully moves this Honorable Court to suppress, and exclude at trial, evidence seized from his home on August 5, 2024.

### Statement of Facts

1. Mr. Hildenbrand and his wife are charged by indictment with Production of Child Pornography.

2. Mr. Hildenbrand was arrested on August 5, 2024 by the Clay County Sheriff's Office (CCSO) after being lured to Clay County by deception by CCSO detectives.

3. Also on August 5, 2024, CCSO detectives arranged for officers with the Cocoa Police Department, Cocoa, Florida and Florida Department of Children and Families (DCF) investigators to go to Mr. Hildenbrand's home at 505 Abbey Lane, Unit D, Cocoa, Florida 32922. When they arrived at approximately 1405 hours, Mr. Hildenbrand's wife Erin Hildenbrand (co-defendant) and minor son K.H. were in his home. The DCF investigators removed K.H. from Mrs. Hildenbrand's custody and took him to a child protection center.

4. Mrs. Hildenbrand was taken to the Cocoa Police Department where she was placed in

1

an interrogation room.  CCSO Detective Ellis and Special Agent Luedke, Homeland Security Investigations, entered the room to interrogate her.  At the outset of the interrogation, after verbally advising Mrs. Hildenbrand of her *Miranda* rights, and before Mrs. Hildenbrand agreed to waive her *Miranda* rights, investigators reinforced that she was not under arrest and would be going home that night and that they wanted to make sure she had "no questions and everything is answered," a reference to the fact that K.H. had been removed from the home.   In other words, investigators painted the interaction as them providing information to Mrs. Hildenbrand.

5.  Prior to substantive discussions about alleged offenses, Mrs. Hildenbrand informed the investigators that she has a learning disability and struggles to read and write.  She also discussed that she needs medication and suffers from seizures and other disorders.  She informed them she was overdue to take several medications.  The investigators did not address the missed medication or further inquire about her competency.

6.  Mrs. Hildenbrand denied seeing Mr. Hildenbrand view child pornography.  Investigators told Mrs. Hildenbrand that Mr. Hildenbrand had "told them about [the child pornography]" making it appear as if Mr. Hildenbrand had confessed to child pornography offenses to the police, which was not true.

7.  The investigators asked Mrs. Hildenbrand if they could search the apartment for laptop computers and other electronic devices.  The investigators asked her to read a consent to search form.  She could not read past the first line.  The investigators took the form and read it to Mrs. Hildenbrand.  Before Mrs. Hildenbrand signed the form, investigators out of the blue inform her that Mr. Hildenbrand was found passed out in St. Augustine in May "with a guy" and required Narcan, a drug to revive someone from an opioid overdose.  Mrs. Hildenbrand was then directed by investigators to sign the consent to search form.

The time was approximately 2200 hours at night.  The investigators then left the room, leaving Mrs. Hildenbrand alone, locked in a room for approximately an hour.

8.  Once the form was signed, Cocoa Police Department officers entered the apartment and seized multiple hard drives, computers, and spy cameras (15 devices total) – see Attachment A.  These devices were later forensically analyzed using search warrants and incriminating evidence was discovered on certain devices.

9.  On July 21, 2025, this Court held a competency hearing for Mrs. Hildenbrand. Testimony, records, and reports established that Mrs. Hildenbrand is and always has been developmentally handicapped and intellectually disabled; that at age 20 she was performing at the level of kindergarten to grade 2.9 such that her ability to reason and think things through was the equivalent of a toddler; that she had a 69 full scale IQ in high school; that she was employed for a period of time through a Mental Retardation and Developmental Disorder (MRDD) program; that her full scale IQ currently is a 51, which qualifies her, with the other psychological criteria, as intellectually disabled; and that she does not understand basic legal concepts. See Doc. 83-2.[11]

### Memorandum of Law and Argument

10.  Mr. Hildenbrand had a reasonable expectation of privacy and property interest in his home for purposes of the Fourth Amendment. *United States v. Jones*, 565 US 400, 404-05 (2012) (re-affirming physical intrusion into home constitutes a "search" under the Fourth Amendment).

11.  The Fourth Amendment protects individuals from unreasonable searches and seizures. *Katz v. United States*, 389 U.S. 347, 351 (1967).  Warrantless searches are per

---

[11] The Court ordered a third competency evaluation of Mrs. Hildenbrand that is pending. Doc. 84.

se unreasonable unless they fall within a recognized exception. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978).  One such exception is a valid consent search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). However, consent must be both voluntary and given by someone with actual or apparent authority to do so.

12.  Third-party consent is valid only if the individual had common authority over the premises. *United States v. Matlock*, 415 U.S. 164, 171 (1974).  Apparent authority may suffice if police reasonably believed the third party had such authority. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).

13.  But even if a person appears to have authority to give third-party consent, that authority must be exercised competently—i.e., the person must have the mental capacity to voluntarily and knowingly give consent. *Schneckloth*, 412 U.S. at 229 ("In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents.").  This includes assessing the custodial status, age, intelligence, education, and mental capacity of the individual giving consent, the belief of the individual that no incriminating evidence will be found, and the presence of coercive police procedures. *See United States v. Chemaly*, 741 F.2d 1346, 1352 (11th Cir. 1984) (identifying a non-exhaustive list of relevant factors for lower courts to consider when making the assessment of whether consent to a warrantless search is voluntary); *see also United States v. Purcell,* 236 F.3d 1274, 1281 (11th Cir. 2001).  The government bears the burden of proving the voluntariness of the consent. *Schneckloth*, 412 U.S. at 222.

14.  Given Mrs. Hildenbrand's obvious issues with respect to her intelligence, education, mental capacity, and medical history, any reasonable officer would have questioned her

4

ability to consent to a search, especially one involving a shared home.  The investigators, on August 5, 2024, instead, detained Mrs. Hildenbrand and employed coercive tactics to obtain consent to search Mr. Hildenbrand's home from an intellectual disabled Mrs. Hildenbrand.  Such consent was involuntary, and the evidence seized during the illegal search must be suppressed.

15.  No warrant or exigency otherwise justified the search of Mr. Hildenbrand's home. Therefore, all evidence and the fruits thereof obtained as a result of this unlawful search must be suppressed as fruits of an unlawful search.

WHEREFORE, Defendant respectfully requests that this Court enter an order suppressing all evidence obtained as a result of the search conducted on August 5, 2024 at 505 Abbey Lane, Unit D, Cocoa, Florida 32922.

Respectfully submitted,

KORODY LAW, P.A.

_____
PATRICK K. KORODY, ESQUIRE
Florida Bar No. : 0107361
118 W. Adams Street, Ste 500
Jacksonville, FL 32202
Telephone: (904) 383-7261
Facsimile:  (904) 204-9548
Email: patrick@korodylaw.com
Attorney for Defendant